No. 23-5676

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
_____

THOMAS CLARDY,

Petitioner-Appellee,

v.

ZAC POUNDS, WARDEN,

Respondent-Appellant.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
_____

REPLY BRIEF OF RESPONDENT-APPELLANT
_____

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

ANDRÉE SOPHIA BLUMSTEIN
Solicitor General

RICHARD D. DOUGLAS
Senior Assistant Attorney General
Criminal Appeals Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: (615) 741-4125
Facsimile: (615) 532-4892
E-mail: Davey.Douglas@ag.tn.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

ARGUMENT ....................................................................................................... 1

    I.     Trial Counsel's Decision Not to Call an Expert Was Not Deficient........................................................................................... 1

        A.    Respondent preserved the argument that counsel was not deficient. ................................................................... 1

        B.    Trial counsel made reasonable efforts to obtain an expert for trial. ................................................................... 5

        C.    Counsel made an informed, strategic decision to challenge the eyewitness identification through cross-examination......... 10

    II.    The Lack of an Expert in Eyewitness Identification Did Not Prejudice Petitioner............................................................ 11

        A.    The state court reasonably applied *Strickland*, and that decision is entitled to deference. ............................... 12

        B.    Petitioner has failed to establish prejudice. ............................. 15

CONCLUSION ................................................................................................... 18

CERTIFICATE OF COMPLIANCE .................................................................. 19

CERTIFICATE OF SERVICE.............................................................................20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Clardy v. State*,
  No. M2017-01193-CCA-R3-PC, 2018 WL 5046032
  (Tenn. Crim. App. Oct. 17, 2018)................................................2, 14, 15

*Davis v. Carpenter*,
  798 F.3d 468 (6th Cir. 2015) ..................................................................6

*Ferensic v. Birkett*,
  451 F.Supp.2d 874 (E.D. Mich. 2006) ....................................................9

*Flick v. Warren*,
  465 F. App'x 461 (6th Cir. 2012) ........................................................6, 7

*Harrington v. Richter*,
  562 U.S. 86 (2011) ...............................................................................16

*Hinton v. Alabama*,
  571 U.S. 263 (2014) ..........................................................................9, 10

*Jones v. United States*,
  262 A.3d 1114 (D.C. 2021) ....................................................................8

*Ludwig v. United States*,
  162 F.3d 456 (6th Cir. 1998) ..................................................................7

*Moore v. Hardee*,
  723 F.3d 488 (4th Cir. 2013) ................................................................16

*Morgan v. Trierweiler*,
   67 F.4th 362 (6th Cir. 2023) ...............................................................2, 3

*Owens v. Parris*,
   932 F.3d 456 (6th Cir. 2019) ...............................................................3, 4

*Rogers v. Mays*,
   69 F.4th 381 (6th Cir. 2023) .............................................................14, 15

*Scottsdale Ins. Co. v. Flowers*,
   513 F.3d 546 (6th Cir. 2008) ....................................................................5

*Strickland v. Washington*,
   466 U.S. 668 (1984) .......................................................................2, 10

*United States v. Nolan*,
   956 F.3d 71 (2d Cir. 2020) ...................................................................8, 9

Rules

Tenn. S. Ct. R. 13 § 5(b)(2)(B) .................................................................7

Tenn. S. Ct. R. 13 § 5(b)(2)(D)…………………………………………………..7

**ARGUMENT**

# I.   Trial Counsel's Decision Not to Call an Expert Was Not Deficient.

Respondent has preserved the argument that trial counsel was not deficient. (Pet. Br., DE 13, Page ID # 45-48.)  Respondent fully briefed that issue after the magistrate introduced it in his report and recommendation.  And the district court resolved the issue on the merits.  Thus, the issue is properly before this Court.

Moreover, trial counsel's testimony about the limited funding available for expert services was not speculative, as Petitioner suggests.  (Pet. Br., DE 13, Page ID # 39-50.)  Counsel testified that she could not find an expert willing to testify for the rates that the State would reimburse.  And, consistent with her testimony, Tennessee law provides for maximum hourly rates for expert witnesses.  Counsel's strategic decision not to make a futile request for funding was informed by her investigation of several experts who confirmed they were not willing to testify at the rates that the State would pay.  Thus, that informed, strategic decision did not amount to deficient performance.

## A.   Respondent has preserved the argument that counsel was not deficient.

Respondent has not forfeited the arguments that counsel could not have requested funding under Tennessee Supreme Court Rule 13 section 5.  Any such request would have failed because counsel was not able to name in a motion any

expert who was willing to testify at the reimbursement rates available under that rule. (Pet. Br., DE 13, Page ID # 45-48.)

Under *Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023), Respondent has not waived or forfeited any argument. This Court "has generally articulated that 'issues raised for [the] first time in objections to [a] magistrate judge's report and recommendation are deemed waived.'" *Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (alterations in *Morgan*))). But in *Morgan*, the magistrate had raised an issue sua sponte, and Morgan's first opportunity to respond to the issue was in his objection to the report and recommendation. *Id.* at 369. This Court ultimately decided the issue on the merits because it was a "legal" issue that was fully brief before the Court, and Morgan had addressed it "at the earliest instance after it was raised." *Id.*

The state court reasonably did not address the issue of deficiency in its opinion because it affirmed the denial of post-conviction relief based on Petitioner's failure to establish prejudice. *Clardy v. State*, No. M2017-01193-CCA-R3-PC, 2018 WL 5046032, at *7 (Tenn. Crim. App. Oct. 17, 2018) ("*Clardy II*"), *perm. app. denied* (Tenn. Apr. 12, 2019); *see Strickland v. Washington*, 466 U.S. 668, 697 (1984) (stating that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant" and that courts should "dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice" if it is "easier" to do so). Accordingly, Respondent's answer only defended the state court's decision on its prejudice analysis. (Petition, RE 1, Page ID # 62-63; Answer, RE 12, Page ID # 2862-64.)

The magistrate was the first court to find deficiency in counsel's decision not to request funding for an expert, and Respondent addressed this argument—with citation to Tennessee Supreme Court Rule 13 section 5—at the first opportunity to do so. (Report and Recommendation, RE 25, Page ID # 2952-53; Objections, RE 28, Page ID # 2987.) The issue was fully briefed below, and it is fully briefed on appeal. Therefore, as in *Morgan*, this Court should address Respondent's arguments that were raised for the first time in objections to the magistrate judge's Report and Recommendation. *See Morgan*, 67 F.4th at 369.

*Owens v. Parris*, 932 F.3d 456, 458-59 (6th Cir. 2019), further supports deciding the merits of Respondent's arguments on the deficiency prong. In *Owens*, the respondent did not dispute in the district court that the state court had unreasonably applied Supreme Court precedent. *Id.* at 458. The district court decided the issue on the merits, and the respondent argued for the first time on appeal that the state court's decision was not unreasonable. *Id.* This Court rejected the petitioner's contention that the respondent had forfeited the argument, concluding that "the district court decided that issue on the merits, which means the State can

challenge that holding now." *Id.* at 458-59 (citing *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011)).

Here, Respondent objected to the magistrate's report and recommendation by arguing that counsel's failure to request funds was not deficient. (Objection to Report and Recommendation, RE 28, Page ID # 2985-88.) Though the district court suggested that Respondent had risked waiving that argument, it nonetheless resolved it on the merits. (Memorandum Opinion, RE 34, Page ID # 3074.) Because the district court decided this issue on the merits, Respondent may challenge that decision on appeal in accord with *Owens*.

Finally, although Respondent did not specifically cite to Tennessee Supreme Court Rule 13 section 5(d)(1)(D) in his objections to the report and recommendation, citation to that rule is directly responsive to the district court's rationale for granting habeas relief. The district court cast aside trial counsel's explanation that she could not find an expert "who would accept a fee in the amount she thought the court would approve." (Memorandum Opinion, RE 34, Page ID # 3074.) The court reasoned that "nothing but counsel's speculation suggests that such a motion would not have been approved." (Memorandum Opinion, RE 34, Page ID # 3074.) And the court specifically concluded that counsel should have requested funds because Tennessee Supreme Court Rule 13 "provides for the 'payment or reimbursement of reasonable and necessary expenses.'" (Memorandum Opinion, RE 34, Page ID # 3074 (quoting

Tenn. S. Ct. R. 13 § 5(a)(1)).)  Surely, Respondent may rebut on appeal those reasons for granting habeas relief.

This Court's consideration of the issue would not conflict with the policies behind the general rule that a party may not raise an argument for the first time on appeal.  That "the rule eases appellate review 'by having the district court first consider the issue.'"  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (quoting *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993)).  The rule also "ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Id.*  Here, the district court squarely considered the issue of whether trial counsel should have requested funding for an expert.  Respondent's argument does not unfairly prejudice Petitioner or cause any surprise on appeal.  Petitioner received the opportunity to address the argument, and both parties have thoroughly briefed the issue.  Accordingly, this Court should address Respondent's arguments on their merits.

**B.**      **Trial counsel made reasonable efforts to obtain an expert for trial.**

Petitioner does not dispute that trial counsel extensively searched for an expert willing to testify but could not find one.  Instead, he contends that, without filing a motion for funding, counsel failed to perform the investigation necessary to reach an informed conclusion about whether funding was available.  (Pet. Br., DE 13, Page ID # 40.)  He alleges that counsel merely speculated about whether the court would

provide funding and failed to confirm the amount that the State would pay. (Pet. Br., DE 13, Page ID # 40, 46-47.) But counsel did not have to file a motion to determine what funding was available. The hourly rates for expert assistance were specified by Tennessee Supreme Court Rule 13. And counsel diligently consulted with several experts, who all confirmed that they were not willing to testify at the rate that the State would reimburse. (Transcript, RE 10-18, Page ID # 2204-06, 2213-14.)

As this Court has observed, our "Supreme Court has never reached the specific questions" of: "how many experts must an attorney contact before proceeding without one, what kinds of outside advice can the attorney rely on, and ultimately how hard must he try." *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015). The only guidance comes from "*Strickland* itself that counsel's efforts must be within 'the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). This "rule is as general as they come. And '[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* at 473-74 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Surely though, "[e]ffective assistance does not require counsel to continue contacting experts until" she finds one "willing to testify against the prosecution's theory of the case." *Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012).

Petitioner also argues that trial counsel should have requested funding, even if she thought the court would deny it, because the request would not have put Petitioner in any worse position. (Pet. Br., DE 13, Page ID # 46-47.) But this is not the standard for assessing whether counsel's performance was deficient. Without being able to identify an expert who was willing to testify at the rate provided by Tennessee Supreme Court Rule 13, trial counsel had no basis to file a motion for funding. *See* Tenn. S. Ct. R. 13 § 5(b)(2)(B), 5(d)(1)(D). Indeed, the trial court would have denied any motion that did not identify the expert or that sought funds above what Rule 13 permitted. *See id.* Because such a motion would not have succeeded, Petitioner cannot show that counsel was deficient for failing to file it. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."); *Flick*, 465 F. App'x at 465 (observing that a petitioner "cannot be prejudiced by counsel's failing to take actions that would ultimately be unsuccessful").

Petitioner stresses that counsel never testified about the hourly rates the consulted experts were willing to accept and that her only concern was whether the Administrative Office of the Courts ("AOC") would pay the fees that were billed. (Pet. Br., DE 13, Page ID # 47-48.) But counsel confirmed that the AOC was not paying expert fees, which deterred some experts from taking the case. (Transcript,

RE 10-18, Page ID # 2204-06, 2213-14.) She also explained that she could not find an expert willing to testify for the "state fees" or the amount that "the State of Tennessee was paying." (Transcript, RE 10-18, Page ID # 2205-06.) This testimony, while not specifying the precise rates available under Tennessee Supreme Court Rule 13, demonstrates that counsel was familiar with those rates. And Petitioner points to nothing in the record showing that counsel was mistaken in her understanding of the available reimbursement rates.

Finally, this case is readily distinguishable from the cases that Petitioner cites. (Pet. Br., DE 13, Page ID # 41-45.) In both *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020), and *Jones v. United States*, 262 A.3d 1114 (D.C. 2021), trial counsel were deficient for wholly failing to consider calling, or even consulting with, an expert in eyewitness identification. *Nolan*, 956 F.3d at 81; *Jones*, 262 A.3d at 1121, 1128. And the eyewitness identification in *Nolan* involved "egregious circumstances" such as police permitting the witnesses to talk among themselves about the petitioner's identification and to view his photographs on social media, all of which compounded counsel's error. *Nolan*, 956 F.3d at 81.

Here, counsel contacted numerous experts and only made the choice not to call one because she could not find one who was willing to testify. Accordingly, neither *Nolan* nor *Jones* stands for the proposition that counsel was deficient for being unable to obtain an expert after considerable diligent efforts to do so.

8

Similarly, the district court decision in *Ferensic v. Birkett*, 451 F.Supp.2d 874 (E.D. Mich. 2006), does not support Petitioner's claim that counsel was deficient. (Pet. Br., DE 13, Page ID # 43.) In *Ferensic*, counsel found an expert willing to testify, but the trial court excluded the testimony because counsel failed to timely disclose the expert report to the prosecution in compliance with the trial court's order. *Ferensic*, 451 F.Supp.2d at 881-82, 885. The district court agreed with the Michigan Court of Appeals that trial counsel was deficient because counsel could have anticipated the exclusion of the witness upon noncompliance with the trial court's order and should have requested a continuance to comply with the order. *Id.* at 882.

Here, by contrast, counsel could not present an expert because she could not find one willing to testify at the rate the State would reimburse. *Ferensic*, like *Nolan* and *Jones*, is therefore distinguishable and does not demonstrate that trial counsel was deficient.

*Hinton v. Alabama*, 571 U.S. 263 (2014), also does not afford Petitioner any relief. (Pet. Br., DE 13, Page ID # 44-45.) In *Hinton*, the trial court granted counsel $1,000 for an expert witness upon the mistaken belief that $1,000 was the statutory maximum that it could provide while inviting counsel to file a request for additional funding. *Hinton*, 571 U.S. at 266. Counsel failed to correct the trial court's mistake because he was unaware that Alabama law no longer imposed a specific limit for the

funds that an attorney could request. *Id.* at 267. Counsel therefore failed to request additional funds and proceeded to trial with the only affordable expert, who testified poorly for the defense. *Id.* 268-69. The Supreme Court held that counsel's performance was deficient, emphasizing that counsel's failure "to make even the cursory investigation of the state statute providing for defense funding" and his mistaken belief that the statute limited the funds that he could request. *Id.* at 274. Here, there is nothing to show that counsel was incorrect or mistaken about the amount that the State would reimburse or that filing a motion for additional funding would have succeeded.

### C. Counsel made an informed, strategic decision to challenge the eyewitness identification through cross-examination.

Contrary to Petitioner's suggestion, trial counsel's decision to forego an expert in favor of thorough cross-examination was informed, strategic, and undoubtedly reasonable. (Pet. Br., DE 13, Page ID # 48-49.) Counsel was aware of the reimbursement rate available for expert witnesses, but her extensive efforts to find an expert who would testify at that rate were fruitless. Thus, counsel rationally turned her focus from expert assistance to impactful cross-examination.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Essentially, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

Here, trial counsel went to great lengths to obtain an expert for trial. (Transcript, RE 10-18, Page ID # 2204-06, 2213-14.)  Despite these efforts, she could not find an expert willing to testify at the available reimbursement rate. (Transcript, RE 10-18, Page ID # 2204-06, 2213-14.)  While Petitioner claims that counsel's belief was "based on nothing but her own speculation," he has not shown that belief was erroneous.  (Pet. Br., DE 13, Page ID # 48.)  Nor has he identified an expert who would have been willing to testify at trial under the available rate for psychiatrists.

Unable to find an expert willing to testify, trial counsel made the reasonable strategic decision not to pursue funding for an expert but instead to challenge Kent's identification through cross-examination.  And even Dr. Neuschatz conceded that trial counsel was able to point out the problems with eyewitness identification that he identified.  (Transcript, RE 10-17, Page ID # 2079-80.)  Because trial counsel based her strategy on a thorough and reasonable investigation, her strategic decision about how to best challenge the identification was not deficient.

## II.     The Lack of an Expert in Eyewitness Identification Did Not Prejudice Petitioner.

Petitioner claims that the state court's rejection of his ineffective-assistance claim was an unreasonable application of *Strickland* and is therefore not entitled to AEDPA deference.  (Pet. Br., DE 13, Page ID # 50-57.)  He also argues that, after applying de novo review, the district court properly concluded that he had

established prejudice. (Pet. Br., DE 13, Page ID # 57-65.) But the state court reasonably applied *Strickland* to adjudicate Petitioner's claim, and this Court should defer to that decision. But even under de novo review, Petitioner has failed to establish prejudice.

A. **The state court reasonably applied *Strickland*, and that decision is entitled to deference.**

The state court did not hold, as Petitioner suggests, that Petitioner had to establish his innocence or to negate Kent's identification in order to establish prejudice. (Pet. Br., DE 13, Page ID # 51.) It also did not impose a higher burden than *Strickland* prejudice but simply applied *Strickland* to the specific facts of the case.

Kent was familiar with Petitioner because he had previously interacted with him. (Transcript, RE 10-2, Page ID # 1087-88, 1113-14.) He identified Petitioner by his first initial on the night of the shooting, and later identified Petitioner in a photographic lineup. (Transcript, RE 10-2, Page ID # 1084-85, 1095, 1097-98, 1111, 1113, 1128-29) Kent insisted at trial that he had "no doubt" that Petitioner was the person who shot Kirk. (Transcript, RE 10-2, Page ID # 1102.) Trial counsel also brought out information about the circumstances surrounding the identification and questioned Kent's reliability. (Transcript, RE 10-2, Page ID # 1112, 1115-16, 1120-22, 1125-28.)

She elicited testimony that Petitioner was wearing a hood and that Kent could only see the side of his face, that Petitioner had a gun, and that Kent had numerous opportunities to see Petitioner's face on wanted posters before Kent identified him at trial. (Transcript, RE 10-2, Page ID # 1115-16, 1120-22.) She brought out information that Kent had reported that Petitioner had tattoos, which Petitioner did not have, and she questioned him about the differences in the description of the car involved in the shooting that he provided to detectives and at trial. (Transcript, RE 10-2, Page ID # 1112-13, 1123-24, 1127-28; Transcript, RE 10-3, Page ID # 1213-14.) She further used opening and closing arguments to stress that Kent's identification could not be trusted because it occurred in a high-stress situation involving guns, when Kent could not clearly see Petitioner's face, and when Kent was mistaken about Petitioner's tattoos. (Transcript, RE 10-2, Page ID # 1018, 1020; Transcript, RE 10-3, Page ID # 1342-48, 1351-52.) She therefore raised issues about the accuracy of eyewitness identification, such as the identification occurring in a high-stress environment where the person had a face covering and a firearm, that an expert would have provided. (Transcript, RE 10-17, Page ID # 2050-52, 2054-56, 2059-60, 2062, 2064-66.)

Based on the opportunity Kent had to observe Petitioner, and differences between his statements to detectives and his testimony at trial, the jury was shown that Kent may have been mistaken about the identification even without hearing Dr.

Neuschatz's testimony. And the state court simply held that Dr. Neuschatz's general testimony about the unreliability of eyewitness identification would not have created a reasonable probability of a different trial outcome. *Clardy II*, 2018 WL 5046032, at \*7. The state court therefore did not unreasonably apply *Strickland*.

Contrary to Petitioner's argument, the state court analyzed prejudice by considering the totality of the evidence. (Pet. Br., DE 13, Page ID # 53-54.) It summarized the proof presented at trial and at the post-conviction hearing. *Clardy II*, 2018 WL 5046032, at \*1, 3-9. The court recognized that "identification of the perpetrators was the central issue during the investigation and at trial" and that Kent's identification was the only direct link to Petitioner. *Id.* at \*1, 6. With this background, the court then analyzed Petitioner's claim and found no prejudice. *Id.* at \*6-7. The state court certainly adjudicated Petitioner's claim while considering the totality of the proof in accord with *Strickland*.

Petitioner argues that his case is distinct from *Rogers v. Mays*, 69 F.4th 381 (6th Cir. 2023) (en banc), because the evidence of guilt in *Rogers* was stronger and because the state court opinion in *Rogers* was lengthier than the state court opinion here. (Pet. Br., DE 13, Page ID # 55-56.) While there was more inculpatory evidence in *Rogers*, the fact remains that Kent identified Petitioner as one of the shooters by his first initial on the night of the shooting, was familiar with Petitioner, and had "[n]o doubt" that Petitioner was one of the shooters. (Transcript, RE 10-2,

Page ID # 1083-85, 1095, 1097-98, 1100, 1102, 1113, 1128-29.)  Therefore, just as with the additional post-conviction proof in *Rogers*, the additional evidence from Dr. Neuschatz would not have created a reasonable probability of a different outcome.

Petitioner also cites no authority for the proposition that the reasonableness of the state court's opinion turns on its length.  Indeed, as this Court observed in *Rogers*, the goal of AEDPA "is to protect against 'extreme malfunctions in the state criminal justice system,' not to create a grading system for state-court opinion writing." *Rogers*, 69 F.4th at 392 (quoting *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022)). And any brevity in the state court's opinion was at least partially attributable to Petitioner, as his argument on prejudice was made "[i]n conclusory fashion." *Clardy II*, 2018 WL 5046032, at *7.  The state court correctly identified and reasonably applied *Strickland* to reject Petitioner's claim.

### B.     Petitioner has failed to establish prejudice.

Petitioner's prejudice argument largely rests on the purported unreliability of eyewitness identification, and he contends that expert testimony on that point would have had a powerful effect on the jury.  (Pet. Br., DE 13, Page ID # 57-62.)  He asserts that counsel's cross-examination was an inadequate substitute for expert testimony and that Kent's confidence in the identification did not eliminate the possibility of prejudice.  (Pet. Br., DE 13, Page ID # 62-65.)  Although Petitioner

cites several cases for the proposition that an expert in eyewitness identification could have aided the defense, (Pet. Br., DE 13, Page ID # 58-62), these cases "do not go so far as to foreclose disagreement over whether failure to provide such a witness constitutes ineffective assistance." *Moore v. Hardee*, 723 F.3d 488, 498 (4th Cir. 2013). Indeed, the cited cases merely demonstrate that fair-minded jurists could disagree on the correctness of the state court's decision, which is insufficient to grant habeas relief. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). The district court's holding that Petitioner established prejudice contravenes AEDPA's deferential standard of review. *Moore*, 723 F.3d at 498.

Moreover, even if this Court conducts a de novo review, Petitioner has not established prejudice. Contrary to Petitioner's assertion, Respondent's argument that Petitioner failed to establish prejudice did not rest entirely on Kent's confidence in his identification. (Pet. Br., DE 13, Page ID # 63-64.) In addition to the confidence of his identification at trial, Kent identified Petitioner by his first initial on the night of the shooting. (Transcript, RE 10-2, Page ID # 1095, 1128-29.) Kent was familiar with Petitioner and had interacted with him on multiple occasions at the auto shop. (Transcript, RE 10-2, Page ID # 1083-85, 1113-14.) But trial counsel was also able to identify potential inconsistencies and mistakes in Kent's identification through cross-examination. (Transcript, RE 10-2, Page ID # 1112-13, 1123-24, 1127-28.) And trial counsel also highlighted for the jury the problems

with eyewitness identification that Dr. Neuschatz identified, including the issue of unconscious transference. (Transcript, RE 10-2, Page ID # 1020-21; Transcript, RE 10-3, Page ID # 1342-48, 1351-52; Transcript, RE 10-17, Page ID # 2050-52, 2054-56, 2059-60, 2062, 2064-70, 2079-80.) Considering the totality of the circumstances surrounding the identification *and* trial counsel's effective cross-examination, Petitioner has not shown *Strickland* prejudice.

# CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

ANDRÉE SOPHIA BLUMSTEIN
Solicitor General

/s/ Richard D. Douglas
RICHARD D. DOUGLAS
Senior Assistant Attorney General
Criminal Appeals Division
P. O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 741-4125
Facsimile: (615) 532-4892
E-mail: Davey.Douglas@ag.tn.gov
Attorney for Respondent-Appellant

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the page limitation set out in Fed. R. App. P. 32 (a)(7)(B)(i) in that the brief contains **3,986** words. In certifying the number of words in the brief, I have relied on the word count of the word processing system used to prepare this brief.

 /s/ Richard D. Douglas
RICHARD D. DOUGLAS
Senior Assistant Attorney General

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this Brief has been filed via the Court's electronic filing system on January 19, 2024. On the same date, a copy of this Brief was served via the Court's electronic filing system to Scott Gallisdorfer, Jessica Van Dyke, and Jason Gichner, at the following email addresses: scott.gallisdorfer@bassberry.com; jessica@tninnocence.org; and jason@tninnocence.org.

      /s/ Richard D. Douglas
      RICHARD D. DOUGLAS
      Senior Assistant Attorney General